UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA ELLIOT<br><br>Plaintiff,<br><br>v.<br><br>RARE HOSPITALITY, INC. d/b/a THE CAPITAL GRILLE<br><br>Defendant. | ) | C.A. No. 05-479-ML |

**DEFENDANT RARE HOSPITALITY, INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant RARE Hospitality, Inc. ("RARE") hereby moves for summary judgment with respect all claims asserted in Plaintiff Linda Elliot's Complaint. In support of its motion, RARE relies on the accompanying Memorandum of Law and Statement of Undisputed Facts.

RARE HOSPITALITY, INC.

By its Attorneys,

/s/ Stephen J. MacGillivray
/s/ Sheryl Hanley
/s/ Raymond M. Ripple

Stephen J. MacGillivray (#5416)
Sheryl Hanley (#5439)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)
smacgillivray@eapdlaw.com
shanley@eapdlaw.com
rripple@eapdlaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA ELLIOT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-479-ML |
| | ) | |
| RARE HOSPITALITY, INC. d/b/a THE CAPITAL GRILLE | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RARE HOSPITALITY, INC.'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendant RARE Hospitality, Inc. d/b/a The Capital Grille ("RARE" or "The Capital Grille", when referring to the Providence location) terminated the employment of Plaintiff Linda Elliot ("Plaintiff") after she repeatedly violated the terms of RARE's Team Member Handbook by engaging in "pushing" and "shoving" of her fellow servers at The Capital Grille. Despite this improper conduct, Plaintiff now seeks to attribute both the circumstances of her employment, and her ultimate termination, to age and gender discrimination in violation of Rhode Island's Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1 *et seq*., discriminatory retaliation in violation of FEPA, and violations of the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq*.

Plaintiff's claims fail on the undisputed facts for the following reasons:



PRV_837966_3/RRIPPLE

Plaintiff's age-based discrimination claim under FEPA fails because "age" was not asserted as a ground for any discrimination in her Charge of Discrimination filed with the Rhode Island Commission for Human Rights and the Equal Employment Opportunity Commission.

Plaintiff's gender discrimination claims fail because although she alleges that she had difficult interactions with coworkers during her final year of employment at The Capital Grille, the allegations she asserts in support of her gender discrimination claim neither constitute conduct that occurred "because of" her gender, nor are they severe and pervasive enough to sufficiently constitute a hostile work environment. Indeed, Plaintiff admitted during her deposition that her colleagues' conduct merely was a result of their resentment of her position as "head server."

Plaintiff's retaliation claim fails because her demotion from head server for a period of two weeks in 2002 (she was later reinstated) occurred more than one-year prior to the filing of her administrative charge and is therefore time-barred. Moreover, to the extent that Plaintiff alleges that her termination is the basis for her retaliation claim, such allegations are insufficient because she has failed to proffer any tenable reason why her termination was actually a pretext for retaliation.

Plaintiff's RICRA claim should be dismissed because her FEPA claim for gender discrimination fails on the undisputed facts. Moreover, as a matter of law, Plaintiff has put forth insufficient facts to establish a violation of RICRA on account of her age.

Finally, Plaintiff's request for punitive damages should be stricken as a matter of law. The discovery period has closed in this case, and despite extensive written discovery and nine (9) depositions, the Plaintiff has developed no facts that show RARE's conduct in this case is tantamount to a criminal act under Rhode Island law.

Accordingly, RARE is entitled to judgment in its favor as a matter of law.

## II. UNDISPUTED FACTS

### A. Plaintiff's Job Position.

The Capital Grille is a four-star restaurant with a location in downtown Providence. (Defendant's Statement of Undisputed Facts ("Defendant's Statement") at ¶ 1.) Plaintiff was employed as a server at The Capital Grille's Providence, Rhode Island location for approximately twelve (12) years, from November 1991 until her termination on September 26, 2002. (Id. at ¶ 2.) As a server, Plaintiff's job duties included, *inter alia*, waiting on customers' tables. (Id. at ¶ 3.) Approximately one year after beginning her employment at The Capital Grille, Plaintiff was given the position of "head server." (Id. at ¶ 3.) There were several head servers at The Capital Grille with only one serving on any given shift. (Id. at ¶ 5.) As head server, Plaintiff handled additional job responsibilities, which included the handling of money for the cash-out of other servers, training new servers, and assisting management with the closing of business at the end of a shift. (Id. at ¶ 4.) On account of her position as head server, Plaintiff was familiar with management's responsibilities and policies. (Id.) Head servers did not receive additional compensation but had access to additional and more favorable seating areas, which provided the possibility of receiving additional tip income. (Id. at ¶ 6.)

### B. RARE's Team Member Handbook and Harassment Policies.

Plaintiff was given RARE's Team Member Handbook (Defendant's Statement at ¶ 7), which is provided to all employees and contains a sexual harassment policy stating that

> [s]exual harassment . . . will not be tolerated at RARE HOSPITALITY, INC. This includes harassment by supervisors, team members, vendors, and Guests. Any team member who engages in any action or conduct constituting harassment will be subject to appropriate disciplinary action, up to an including termination.

(Id. at ¶ 8.)

The sexual harassment policy further provides the following regarding the reporting of claims of harassment:

> All complaints of harassment should be reported to one of your managers, your Regional Manager, or Nancy Winship in Human Resources (800-434-MAIL.) **The important thing is that you talk to someone who can help,** since we cannot protect you from such behavior if we are unaware that it is occurring. Every complaint will be investigated and appropriate action taken in accordance with this policy.

(Id. at ¶ 9.) (emphasis in original.)

The Team Member Handbook also specified numerous examples of reasons for which immediate termination would be appropriate, without resorting to lesser forms of warnings or reprimands. (Id. at ¶ 10.) Among the reasons, RARE specifies that the following conduct is grounds for immediate termination:

> 26. Disorderly conduct; engaging in horseplay; fighting or provoking a fight, *or use of physical force against a team member* or Guest except in self-defense; acts of violence towards a team member or Guest using obscene, profane or abusive language; causing a disturbance; engaging in lewd, obscene or otherwise inappropriate or disorderly conduct.

(Id.) (emphasis added.) Plaintiff admits that it was The Capital Grille's policy that employees who engaged in the use of physical force in the workplace would be subject to immediate termination. (Id. at ¶ 11.)

**C. Plaintiff's Employment at RARE and Her Allegations of Harassment.**

Plaintiff was one of the top servers at The Capital Grille in terms of sales, and received several awards for service and her sales ability. (Defendant's Statement at ¶ 12.) Plaintiff testified that, during her first ten (10) years of employment – or from 1991 until 2001 - she enjoyed working at The Capital Grille and did so in a "harassment-free environment." (Id. at ¶ 13.) Plaintiff further testified that she enjoyed a good relationship with her managers, and that

they were accessible for all employees. (Id. at ¶ 14.) However, Plaintiff alleges that, beginning in November 2001, she encountered harassment from several other servers who "wanted [her] fired." (Id. at ¶ 15.)

**1. "Gender-related" allegations.**

According to Plaintiff, the watershed event in terms of her relationship with other servers at The Capital Grille occurred on November 7, 2001. (Id. at ¶ 16.) Plaintiff alleges that she was preparing salads for dinner guests when she was asked to assist a food runner with the delivery of several meals. When she returned to her salads, they were no longer where she had left them. Plaintiff alleges that another server informed her that Regina Curran, a fellow server, had taken her salads. (Id.) Plaintiff then returned to make additional salads and opened the refrigerator to obtain more salad. Plaintiff alleges that Regina Curran then reached into the same refrigerator to obtain additional salad, when a plastic bag of salad fell and hit Plaintiff in the face. (Id.) According to the Plaintiff, the incident went no further. (Id.) Regina Curran, however, alleged in a complaint reported to management that Plaintiff had pushed her during the incident. (Id.)

On November 8, 2001, the day following the incident with Regina Curran, Plaintiff was reprimanded by Brian Foye, The Capital Grille's Regional Director of Operations, for pushing Regina Curran. (Id. at ¶ 17.) As part of the reprimand, Mr. Foye directed the Plaintiff to sign a document entitled "Written Warning and Last Chance Agreement." The warning stated that

> [t]he investigation found that you used poor judgment and acted inappropriately in dealing with another staff member. It is imperative that you use better judgment in your actions in the future. The RARE handbook specifically states on page 27, paragraph 26 ***"use of physical force against a team member or guest except in self defense; acts of violence towards a team member or a guest; causing a disturbance; engaging in inappropriate or disorderly conduct."***
>
> We conclude that your actions warrant termination of employment, however, due to certain mitigating circumstances, including your acknowledgement you understand the

> seriousness of your misconduct, we are willing to provide you with one last chance to adhere to policies and procedures. Any future infractions of company policy will result in immediate termination.

(Id. at ¶ 18.) (emphasis in original.) Plaintiff now alleges that she signed this document "under duress," and that Regina Curran lied about Plaintiff's pushing to have her fired. (Id. at ¶ 19.) Plaintiff later wrote a memorandum to Mr. Foye expressing her concern that Regina Curran had lied regarding the pushing allegations. (Id. at ¶ 20.)

During the next several months following the incident with Regina Curran, Plaintiff alleges that she was subjected to the following types of harassment by male servers Thomas McDonald and Robert Moren:

- That she overheard Mr. McDonald and Mr. Moren claiming that they would "get her." She also heard Mr. Moren refer to her as "the evil one," "sexless," and on three to five occasions as "queen." (Id. at ¶ 22.)

- That Mr. McDonald and Mr. Moren would make statements to her such as "Don't touch me," "Don't push me," or "You've been warned." (Id. at ¶ 24.)

- That on several occasions her guests' checks were deleted from the restaurant computer system, causing delays in serving her guests. (Id. at ¶ 25.)

- That during her last year of employment, Mr. Moren would "often" call her "bitch" on a "nightly basis" during their interactions while working the same shift. (Id. at ¶ 27.)

- That Mr. McDonald, Mr. Moren, and other servers would not assist other servers, or otherwise act as "team players"; however, Plaintiff "could not remember the names" of those who had refused to help her. (Id. at ¶ 28.)

On May 23, 2002, Plaintiff alleges that she observed Mr. McDonald pour milk into a refrigerator that she had recently cleaned. (Defendant's Statement at ¶ 29.) When she reported this issue to the manager on duty at the time, Stephen Lydon, he informed her that he would report the incident to Kenneth Osgood, the Managing Partner of The Capital Grille. (Id. at ¶ 30.) The next day, on May 24, 2002, Plaintiff met with Mr. Osgood to discuss her recent complaint

regarding Tom McDonald. During that meeting, Mr. Osgood informed Plaintiff that there had been several recent complaints about her by Mr. McDonald regarding her inappropriate use of physical force in the workplace. (Id. at ¶ 31.) Indeed, on May 23, 2002, Mr. McDonald had filed an employee grievance form regarding Plaintiff's recent use of physical force. (Id. at ¶ 32.) On account of Plaintiff's conduct, Mr. Osgood informed Plaintiff that she was no longer to serve in the capacity of head server. (Id.) By Plaintiff's own admission, however, this demotion only lasted for a period of two weeks when she was reinstated as head server. (Id. at ¶ 33.)

Following her demotion from head server, Plaintiff claims that Mr. Moren and Mr. McDonald increased their discussions regarding pushing and shoving – "I became more aware of them constantly around me saying pushing and shoving, don't push me, don't shove me." (Id. at ¶ 34.)[1] Plaintiff testified that it was her belief that Ms. Curran, Mr. McDonald, and Mr. Moren were "out to get [her] fired."

> A. Chris [(another server at the restaurant)] was well aware that Tom McDonald and also Rob Moren and Regina [Curran], who was a friend of the male servers, he had heard these three servers say that they were – that they were out to get me, and by that I mean that they were out to get me fired through their little – it was their group that would constantly say that I was pushing and shoving people, which was totally false.

(Id. at ¶ 35.)[2]

The Plaintiff further testified at her deposition that she believed Ms. Curran, a female server, was harassing her as well.

> Q. And Regina was harassing you as well?

[1] Plaintiff testified that, prior to this time, her relationship with Mr. Moren was "absolutely" professional, and that it changed due to Mr. Moren's plan "with Tom McDonald and Regina Curran to have me fired from the Capital Grille." (Id. at ¶ 38.)

[2] Plaintiff later testified, however, that she is unaware whether other servers ever heard Mr. Moren, Ms. Curran, and Mr. McDonald discuss pushing and shoving relating to Plaintiff. (Id. at ¶ 36.) (Q: "So you don't know that he actually witnessed them and heard them talking? A: No, I don't.".)

A. Well, what I mean by that is – yes. They – they had it in for me. They wanted to see me fired. This was what all the complaints about me to management was about, it was about getting me fired.

Q. Do you think Regina wanted to see you fired because you were a woman?

A. Possibly.

Q. Did she ever say anything to make you believe that?

A. She did make statements that she did want me fired, yes.

Q. What statements did she make that she wanted you fired because you were a woman?

A. Not necessarily because I was a woman. It was because they – they wanted my position.

Q. It almost didn't matter who you were, did it?

A. It didn't matter who I was, exactly . . . .

Q. They wanted the status that you had?

A. Exactly. They resented my position.

Q. Right. I mean, that's really what it was all about, wasn't it?

A. That is what it was all about.

(Defendant's Statement at ¶ 37.)

On September 21, 2002, Plaintiff had an altercation with Mr. Moren at the service bar of the restaurant. (Id. at ¶ 39.) As reported to management, Mr. Moren alleged that Plaintiff shoved him in an effort to obtain room at the service bar and referred to him as a "queer." (Id.) Plaintiff denies that she shoved him at the service bar and alleges that Mr. Moren responded "lick my d---." (Id.) Mr. Moren complained to the manager on duty, Stephen Lydon, regarding the altercation. (Id. at ¶ 40.) On September 26, 2002, Mr. Osgood terminated Plaintiff for her conflict with Mr. Moren, and her violation of the Last Chance Agreement. (Id. at ¶ 41.) Upon

leaving Mr. Osgood's office following her termination, Plaintiff slammed the office door into one of the servers upon her exiting the building. (Id. at ¶ 42.)

**2. "Age-related" allegations.**

In addition to the foregoing, purported gender-related allegations, Plaintiff claims that when she would discuss employment issues with her managers Ken Osgood or Steve Lydon they made comments along the lines of "why don't you just retire?" (Defendant's Statement at ¶ 43.) Plaintiff could only recall Mr. Lydon making this comment on two occasions. (Id.) Moreover, Plaintiff could only recall such a discussion with Mr. Osgood occurring on one occasion during her final year of employment, and "possibly" on one other occasion. (Id.)

**D. Plaintiff's Alleged Post-Employment Interactions with RARE.**

Plaintiff alleges that she received a "hate letter" in the mail approximately three (3) months following her termination. (Defendant's Statement at ¶ 44.) The un-signed letter contained the following: "monkey-woman"; "ugly"; and "hag." (Id. at ¶ 45.) The letter also stated "fired at 60! Ha-Ha", even though Plaintiff was not sixty (60) at the time of her termination. (Id.) Plaintiff attributes the creation of this letter to her former co-worker, Mr. Moren. (Id. at ¶ 46.) The Capital Grille did not reinstate Plaintiff's employment, despite Plaintiff's request for reinstatement. (Id. at ¶ 47.) There is no evidence on the record indicating that this letter was sent with the consent, or even the knowledge, of RARE.

**E. Plaintiff's Charge of Discrimination.**

On July 16, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Rhode Island Commission for Human Rights (the "Commission"), and checked "Sex" and "Retaliation," but not "Age" as the bases for her claim of discrimination. (Defendant's Statement at ¶ 48.) When describing the particulars of her claim

of discrimination, Plaintiff alleged only that "[d]uring approximately the final year of my employment at [The] Capital Grille, I was subjected to sexist, derogatory comments from male co-workers. In addition, the same male co-workers engaged in acts of harassment, including but not limited to making false accusations of misconduct against me, and interfering with my serving of customers." (Id. at ¶ 49.) Plaintiff further alleged that her complaints to management resulted in her "demotion from head server, and subsequently, my termination." (Id. at ¶ 50.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c.) A fact is only "material" if its "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Once the movant has made the showing that no genuine issue of material fact exists, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The First Circuit has required that courts act as a gate keeper for these types of claims, holding that summary judgment is an appropriate vehicle for "polic[ing] the baseline for hostile environment claims." Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 84 (1st Cir. 2006) (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc)).

## III. ARGUMENT

### A. Plaintiff's Age Discrimination Hostile Work Environment Claim Under FEPA Fails As A Matter Of Law Because It Was Not Asserted In Her Charge Of Discrimination.

In order to pursue a claim for employment-related discrimination, an employee must file an administrative charge as a prerequisite to commencing a civil action. R.I. Gen. Laws § 28-5-14.1; 42 U.S.C. § 2000e-5(f); see Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). The purpose of this requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation. Lattimore, 99 F.3d at 464 (citing Powers v. Grinnell Corp., 915 F.3d 34, 37 (1st Cir. 1990) (addressing charge requirements under the ADEA)). As a result, courts have routinely held that, in employment discrimination cases, "[t]he scope of the civil complaint . . . is limited by the charge filed with the [administrative agency] and the investigation which can reasonably be expected to grow out of that charge." Lattimore, 99 F.3d at 464; see Paulo v. Cooley, Inc., 686 F. Supp. 377 (D.R.I. 1988) (holding that an employer is entitled to summary judgment as to claims brought under FEPA where the employee failed to comply with the statutory prerequisites to commencing a judicial action).

In this case, Plaintiff filed a charge of discrimination with the EEOC and the Commission on the basis of gender and retaliation, but failed to indicate any allegations of discrimination on the basis of age. (Defendant's Statement at ¶ 48.) This was more than a typographical error. In her description, Plaintiff set forth the factual specifics of her claims against The Capital Grille, yet fails to make any allegations whatsoever that even remotely pertain to discrimination based on age. (Id. at ¶¶ 49 – 50.) Consequently, Plaintiff's age-based hostile work environment claim fails as a matter of law.

**B. Plaintiff's Gender-Based Hostile Work Environment Claim Under FEPA Fails As A Matter Of Law Because The Alleged Harassment Was Neither "Based Upon" Her Gender, Nor Was It "Severe Or Pervasive."**

In order to prove a gender-based hostile work environment claim under FEPA, a Plaintiff must provide competent evidence satisfying each of the following elements: (1) the employee is a member of a protected class; (2) the employee was subjected to unwanted harassment; (3) that the harassment was based upon his or her sex; (4) that the harassment was sufficiently severe and pervasive so as to alter the conditions of plaintiff's employment and create an abusive environment; (5) that the harassment was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it do be so; and (6) that some basis for employer liability has been established. DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 23 (R.I. 2005) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).)[3]

On the undisputed facts, the Plaintiff cannot prove the third or fourth elements of the foregoing test.

**1. The alleged harassment in this case was not "based on" Plaintiff's gender.**

**"**Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex." Oncale v. Sundowner Offshore Servcs., Inc., 523 U.S. 75, 80 (1998) (emphasis added.) See Bartlett v. Am. Power Conversion Corp., C.A. No. 05-084-ML, 2006 WL 2709494, at *6 (D.R.I. Sept. 20, 2006) (holding that "fatal flaw" to plaintiff's hostile work environment claim was "some evidence that she was

[3] Because FEPA is the Rhode Island state analog to Title VII, Rhode Island courts consistently follow federal court decisions interpreting Title VII when analyzing FEPA claims. See Dollar Tree, 875 A.2d at 21 (holding that the Rhode Island Supreme Court "will remain faithful to federal precedents interpreting federal antidiscrimination statutes, such as Title VII"); Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 898 (R.I. 1984) (same).

harassed *because of* her gender."). Instead, anti-discrimination laws were intended to protect employees from discrimination based on their membership in a protected class, not based on their existence as a person or their mere status as an employee. See Bartlett, 2006 WL 2709494, at *6. Moreover, courts have expressly rejected arguments by plaintiffs that gender-neutral incidents of harassment perpetrated against a woman can be collectively transformed into harassment based on her gender. See, e.g., DeCamp, 875 A.2d at 23 n.9 ("We expressly reject plaintiff's counsel's contention at oral argument that several incidents of harassment perpetrated against a woman, none of which expressly refers to her gender, somehow can be aggregated to support an inference that the mistreatment had to be harassment based on gender.").

After the close of extensive discovery, the uncontested facts do not support Plaintiff's contention that she was harassed by her co-workers because she is a woman. Rather, by her own admission, the crux of Plaintiff's "harassment" claim against RARE is that she was mistreated by several co-workers (Regina Curran, Tom McDonald, and Robert Moren) because they coveted her position as head-server. Consequently, Plaintiff repeatedly emphasized at her deposition that it was her belief that these servers "were out to get her fired." (See, e.g., Defendant's Statement at ¶¶ 15, 35, 37.) Plaintiff specifically testified that the alleged mistreatment by her co-workers was "not necessarily because I was a woman . . . [i]t was because they – they wanted my position . . . . It didn't matter who I was, exactly . . . ." (Id. at ¶ 37.)

In an effort to elevate her rivalry with the other servers into gender-based harassment, Plaintiff relies on myriad types of alleged mistreatment by her co-workers. As an initial matter, Plaintiff maintains that her co-workers fabricated the allegations of pushing and shoving in order to place her in trouble with management. (Id. at ¶ 20.) Even if true, however, this conduct, albeit deceitful and wrong, is in no way harassment "based on" her gender. See Bartlett, 2006

WL 2709494, at *6. Indeed, Regina Curran, the lone actor that lodged the allegedly false complaint to management regarding pushing and shoving, is a woman.

Moreover, Plaintiff alleges that the other servers' plot to have her fired resulted in her guests' order information being intentionally deleted from the computer system. By her own admission, however, Plaintiff was unsure who deleted the information. (Id. at ¶ 25.) This allegation also has nothing to do with her gender. Plaintiff further alleges that Mr. McDonald and Mr. Moren were not "team players", and would not assist other servers, including the Plaintiff, when they needed help. (Id. at ¶ 28.) Again, the fact that Mr. McDonald and Mr. Moren were not willing to assist the Plaintiff in her job duties is unrelated to her gender.

In addition to the foregoing complaints regarding her working conditions, Plaintiff alleges that Mr. Moren and Mr. McDonald referred to her in a derogatory manner. At her deposition, Plaintiff testified that on several occasions Mr. Moren would "blurb out" the following in her presence: "queen," "evil one," and "sexless." (Id. at ¶ 22.)[4] While Plaintiff may have perceived these terms as offensive, such name-calling was not "based on" Plaintiff's gender. See, e.g., Reyes v. McDonald Pontiac-GMC Truck, Inc., 997 F. Supp. 614, 617 (D.N.J. 1998) (holding that supervisor's references to employee on two occasions as "Miss F***ing Queen Bee" did not show that employee was discriminated against because of her sex.)

Plaintiff also alleges that Mr. Moren referred to her as a "bitch" on a nightly basis when they worked the same shift. (Defendant's Statement at ¶ 27.) Again, while the term "bitch" is clearly an inappropriate comment to make to a coworker – let alone anyone – it is not

[4] Importantly, the record is not clear that such comments were specifically directed to Plaintiff, as opposed to merely stated in her presence or so that she could overhear the discussion. See Whittaker v. N. Ill. Univ., 424 F.3d 640, 645 (7th Cir. 2005) (noting that derogatory comments not directed at plaintiff will not support a hostile work environment claim.)

mistreatment *because of* Plaintiff's gender. See, e.g., Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996) (Posner, J.) (rev'd on other grounds) (holding that the term "bitch" is not indicative of abuse of a woman because of her gender rather than a personal dislike that is unrelated to the gender of the person); Reyes, 997 F. Supp. at 618 (same); La Marco v. N.Y. State Nurses Assoc., 118 F. Supp. 2d 310, 318 (N.D.N.Y 2000) (interpersonal problems between men and women wherein male defendant told plaintiff "Go to hell, bitch," do not rise to level of a hostile work environment). Accordingly, the alleged harassment of Plaintiff by her co-workers was not because of her gender.

**2. The alleged harassment was not severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive environment.**

To succeed on her hostile work environment claim, Plaintiff must be able to demonstrate that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment or to create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). See also Pomales, 447 F.3d at 83. To assess whether alleged harassment reaches this level of severity, courts will "examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Id. (citing O'Rourke, 235 F.3d at 729.) See also Harris, 510 U.S. at 21. Importantly, Title VII is neither a civility code nor a general anti-harassment code. Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 44 n.5 (1st Cir. 2003) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

The First Circuit has noted, "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard cold world." Suarez v. Pueblo Int'l Inc., 229 F.3d 49, 54 (1st Cir. 2000). Offensive utterances and offhand comments do not amount to discriminatory changes in the terms and conditions of employment. Russell v. Enter. Rent-a-Car Co. of R.I., 160 F. Supp. 2d 239, 261 (D.R.I. 2001); Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). In other words, as the Seventh Circuit Court of Appeals has stated, the workplace that is actionable is one that is "hellish." Whittaker v. N. Ill. Univ., 424 F.3d 640, 645 (7th Cir. 2005).

Plaintiff fails to establish that her alleged mistreatment by her coworkers was so severe or pervasive that it altered the terms and conditions of her employment. Plaintiff alleges that on several occasions her server information was "merged" or deleted, but she concedes that she was unaware who, if anyone, actually deleted the information. (Defendant's Statement at ¶ 25.) Indeed, Mr. Lydon indicated that such confusion with guest checks was not uncommon in the restaurant's busy environment. (Id. at ¶ 26.) Additionally, Plaintiff's allegations that Mr. Moren, Mr. McDonald, and Ms. Curran made false complaints regarding pushing and shoving in order to have her fired are neither severe or pervasive enough to constitute a hostile work environment.

RARE was permitted to credit its employees' complaints regarding Ms. Elliot's conduct, and documented it properly. Indeed, Ronald Corbett, a server at The Capital Grille who is not alleged to have mistreated the Plaintiff, testified that she is an aggressive person who engaged in

inappropriate conduct of her own. (Id. at ¶ 53.) It is hardly severe or pervasive "harassment" for RARE's management team to credit certain employees' substantiated complaints regarding Ms. Elliot. If RARE management discredited the other servers' complaints regarding the Plaintiff's conduct as mere fabrications, but then accepted Ms. Elliot's characterization of the events as true, could the other servers have brought suit for harassment?

As for the derogatory comments made to Plaintiff, the isolated comments of "queen," "evil one", and "sexless", while inappropriate, are neither severe nor pervasive enough to constitute a hostile work environment. Russell, 160 F. Supp. 2d at 261. Moreover, Plaintiff's allegation that Mr. Moren referred to her as "bitch" on a nightly basis when they worked together during her final year of employment is also not sufficient, even when viewed together with the other allegations, to establish a severe or pervasive hostile work environment. The restaurant business, in particular, provides for a fast-paced and sometimes stressful work environment in which the "ordinary sings and arrows" of the "hard cold world" will inevitably occur. Suarez, 229 F.3d at 54. In fact, Mr. Corbett testified that Plaintiff made such comments about her coworkers. (Defendant's Statement at ¶ 53.) There is nothing "severe" about these comments for purposes of FEPA. Indeed, the comments created such a hostile work environment for Plaintiff that she sought reinstatement following her termination, and testified at her deposition that she enjoyed working at The Capital Grille. (Id. at ¶¶ 54 – 55.)

Furthermore, to the extent that Plaintiff attempts to rely on the letter that she received post-termination to support her hostile work environment claim (even to the extent that she has admissible evidence that it came from a former coworker), that argument would fail. By its very definition, conduct that supports a hostile work environment must have actually occurred during employment and at the subject work environment. See DeCamp, 875 A.2d at 23 (holding that

harassment must be "sufficiently severe or pervasive so as to alter the *conditions of plaintiff's employment* and create an *abusive work environment*") (emphasis added). Accordingly, for the foregoing reasons, Plaintiff's gender-based hostile work environment claim fails as a matter of law.

**C. Plaintiff Has Failed To Establish Her Retaliation Claim As A Matter Of Law.**

In order to prove a *prima facie* case of retaliation, "a plaintiff must establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero-Cerez v. United States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004); see Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., 447 F.3d 105, 113-14 (1st Cir. 2006). To establish a causal connection, a plaintiff can rely on the temporal proximity between her complaints and her termination. Castro, 447 F.3d at 85. However, there must be proof that the decision-maker knew of the plaintiff's protected conduct when he decided to take the adverse employment action. Id.

Once a plaintiff has established a *prima facie* case of retaliation, the defendant has the burden of coming forward with a "legitimate, nondiscriminatory business reason for the adverse employment action." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (noting that the burden shifting standard applies to retaliation claims). If the employer articulates a non-discriminatory reason for plaintiff's termination, the burden shifts back to the plaintiff to put forth admissible evidence to show pretext. See Augustin v. Yale Club of New York City, C.A. No. 03-1924, 2006 WL 2690289, at *27 (S.D.N.Y. 2006) (describing pretext as "circumstances that would be sufficient for a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination").

Plaintiff's retaliation claim fails for several reasons. First, Plaintiff's reliance on her demotion from head server as an adverse employment action is time-barred. In her charge of discrimination, Plaintiff states that the grounds for her retaliation claim are that her "complaints to Capital Grille management resulted in [her] demotion from head server, and subsequently, [her] termination." (Defendant's Statement at ¶ 50.) Nonetheless, it is undisputed that Plaintiff was demoted from her position as head server on May 24, 2002. (Defendant's Statement at ¶¶ 31 – 32.) It is further undisputed that Plaintiff did not file her charge of discrimination based on her demotion until July 16, 2003, more than one year following her demotion. (Id. at ¶ 48.) Accordingly, Plaintiff's retaliation claim is time-barred as a matter of law to the extent that it relies on her demotion from head server as the "adverse employment action." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.2d 50, 55 (1st Cir. 2006) (holding that discrimination claim is time-barred on account of failure to bring administrative charge within statutory period of discriminatory act).

Second, to the extent Plaintiff relies on her ultimate termination as the adverse employment action for purposes of her retaliation claim, Plaintiff fails to establish a *prima facie* case of retaliation. Plaintiff's retaliation claim fails because she cannot put forth any competent evidence to establish that there is a causal connection between her termination and any protected conduct. When asked to elaborate on her retaliation claim during her deposition, Plaintiff stated "I believe the reason I was terminated was because I made complaints to management about other servers and also I was terminated because other servers made false statements against me." (Id. at ¶ 51.)

RARE terminated the Plaintiff on September 26, 2002, due to her physical altercation with another server on September 21, 2006. The reason provided for the five day delay from the

altercation until the Plaintiff's termination was that Ken Osgood, the Managing Partner of the restaurant, was traveling on vacation and not back in the restaurant until September 26, 2002. (Id. at ¶ 57.) Plaintiff appears to contend, however, that her discussions with managers regarding the alleged harassment were the cause for her termination. Plaintiff, however, fails to specify complaints made to management close enough in time to her termination to permit a reasonable juror to conclude that there was a causal connection between any such complaints and her termination. To the extent that Plaintiff relies upon any complaints to management regarding the incident with Mr. Moren on September 21, 2002, as the basis for her protected conduct, that argument would fail. The altercation with Mr. Moren on September 21, 2002, was clearly a disagreement with coworkers who did not get along and who exchanged like-kind exchanges of inappropriate comments. There is nothing about that altercation that would have made any "complaint" to a manager protected conduct.[5] The fact that Plaintiff claims she told her "side of the story" regarding the altercation to Mr. Lydon (the manager who did not terminate her) does not elevate her recapitulation of the events to the status of "protected conduct."

Third, even assuming that Plaintiff can establish a *prima facie* case of retaliation, RARE has clearly established a non-discriminatory reason for her termination. Plaintiff was warned on numerous occasions over the course of several years regarding her pushing in the workplace and her aggressive behavior in violation of the Team Member Handbook – the ultimate reason for her termination. In an effort to establish pretext, Plaintiff alleges that the complaints regarding

[5] It is undisputed that, during her tenure of employment, Plaintiff never complained to RARE's Human Resources Department regarding any alleged inappropriate conduct, nor did she ever call the corporate "Hot-Line" or 1-800 Number, provided in the Team Member Handbook, to report any such conduct. (Defendant's Statement ¶ 52.) Accordingly, any such claims are barred pursuant to the affirmative defense recognized by the Supreme Court in Faragher v. City of Boca Raton, 524 U.S. 775, 787-89 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998) (employer exercise of reasonable care to prevent and correct promptly any harassment creates an affirmative defense to claims of harassment).

pushing and shoving were "false statements" lodged with management to cause her termination. (Defendant's Statement ¶ 51.) However, the fact that RARE's management believed Plaintiff's coworkers' descriptions of events, and not her account, is inconsequential. See Augustin, 2006 WL 2690289 at *28 (noting that the mere fact that plaintiff may disagree with her employer's actions or think that her behavior was justified does not raise an inference of pretext). It is undisputed that Plaintiff's co-workers – both men and women – complained to management regarding her behavior. (Defendant's Statement at ¶¶ 16, 31, 40.) RARE's management was permitted to credit their complaints regarding the Plaintiff. See Augustin, 2006 WL 2690289 at *28. Indeed, whether the complaints were "false" is lessened by the fact that management knew from their own observations that the Plaintiff engaged in pushing and shoving, and that other co-workers, who were not alleged to have mistreated the Plaintiff, acknowledged her aggressive behavior. See, e.g., (Defendant's Statement at ¶ 53.) Furthermore, the allegation that Plaintiff was terminated on account of her complaints regarding any derogatory comments made to her by co-workers would not permit a rational trier of fact to infer that The Capital Grille's decision to terminate her employment was retaliatory. Plaintiff was a long-time employee fired immediately following her altercation with another server. The fact that Plaintiff had discussions with her managers on previous occasions regarding derogatory comments made by Mr. Moren would not permit a rational trier of fact to conclude that she was fired on September 26, 2002 for those earlier complaints, instead of her physical altercation with another server that occurred literally days prior to her termination. Accordingly, for the foregoing reasons, Plaintiff's retaliation claim fails as a matter of law.

**D. <u>Plaintiff's RICRA Claim Fails For The Same Reasons As The FEPA Claims.</u>**

**1. Age discrimination.**

Despite the fact that Plaintiff's age-based discrimination claim is time-barred, Rhode Island law does not currently prevent a Plaintiff from pursuing the same FEPA time-barred allegations as a RICRA age-based discrimination claim.[6] Nonetheless, Plaintiff's age-based RICRA discrimination claim still fails on the undisputed facts because Plaintiff has simply failed to elicit sufficient facts to support her claim that she suffered a hostile work environment on account of her age.

As an initial matter, Plaintiff provided no support whatsoever for her age discrimination claim in her responses to RARE's First Set of Interrogatories. Interrogatory No. 6 requested Plaintiff to list each and every occasion on which she complained regarding any alleged discrimination. In response, Plaintiff set forth five (5) pages of complaints and alleged "harassment" relating to her employment, but never provided any facts to support a claim of age discrimination.[7] (Defendant's Statement at ¶¶ 48 – 49.) Additionally, Plaintiff testified at her deposition that, at the time she was terminated, she was not informed that she was being terminated on account of her age. (<u>Id.</u> at ¶ 56.) Indeed, the only facts that Plaintiff puts forward in support of her age discrimination claim are that, on several occasions when she would

[6] On September 18, 2006, the United States District Court for the District of Rhode Island certified the following question to the Rhode Island Supreme Court: What is the statute of limitations applicable to an employment discrimination claim asserted under the Rhode Island Civil Rights Act? <u>Horn v. Southern Union Co.</u>, --- A.2d ----, 2006 WL 2864737, at *1 (R.I. Sept. 20, 2006); <u>see</u> <u>also</u> <u>Croce v. State</u>, 881 A.2d 75 (R.I. 2005) (noting the unsettled question of Rhode Island state law as to what statute of limitations applies to RICRA claims arising from the employment context.)

[7] Additionally, with respect to claims of harassment that appear age and gender neutral (*e.g.*, her car being "keyed" in the parking lot), Plaintiff conceded at her deposition that she did not believe that this conduct occurred on account of her age. (Defendant's Statement ¶ 23.)

complain to her managers regarding her co-workers' conduct, she would be asked by her managers "why don't you retire?" (Id. at ¶ 43.) Although Plaintiff could not provide a specific number of times these comments were made to her, she testified that it was "often" and that she could "recall that it was made to me within the last year that I worked there." (Id.) Aside from these allegations, Plaintiff has no other facts to support her RICRA age-based discrimination claim.

The foregoing conduct, even assuming it occurred for purposes of this Motion, simply is not severe or pervasive enough as a matter of law so as to have altered the conditions of her employment. Isolated and offhand comments do not amount to discriminatory changes in the terms and conditions of employment. Russell, 160 F. Supp. 2d at 261. Accordingly, Plaintiff's age discrimination allegations fail to meet the requirements for a FEPA or Title VII age-discrimination claim, and therefore are not sufficient as a matter of law to establish a RICRA claim. See Kriegel v. State of Rhode Island Dept. of Corr., 266 F. Supp. 2d 288, 301 n.14 (D.R.I. 2003) (holding that plaintiff's inability to establish hostile work environment claim under FEPA means that his RICRA claim for hostile work environment also fails); Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 573 (D.R.I. 1996) (holding that if Plaintiff succeeds in proving FEPA allegations, she will also succeed on her RICRA claim). Therefore, RARE is entitled to summary judgment with respect to Plaintiff's age-based RICRA claim.

**2. Gender discrimination.**

Plaintiff's RICRA claim, to the extent it is based on Plaintiff's gender, should be dismissed because her FEPA claim for gender-based discrimination fails as a matter of law. See, e.g., Kriegel, 266 F. Supp. 2d at 301 n.14 (holding that plaintiff's inability to establish hostile

work environment claim under FEPA means that his RICRA claim for hostile work environment similarly fails).

**E. Plaintiff Has Failed To Develop Sufficient Facts To Support Her Demand For Punitive Damages.**

Under Rhode Island law, a plaintiff is entitled to punitive damages only when she produces "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993). In Palmisano, the Rhode Island Supreme Court emphasized that the standard for imposing punitive damages "is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." Id. (citing Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir. 1992)). Whether a party seeking punitive damages "has met the high standard imposed on such an award," and whether there are adequate facts to support such an award, is a question of law for the court. Id.; see Pharmacy Servcs., Inc. v. Swarovski North Am. Ltd., C.A. No. 04-072-T, 2006 WL 753055, at *6 (D.R.I. Mar. 21, 2006) (holding at the summary judgment stage that plaintiff "failed to present any evidence that would support [] a finding [of punitive damages]").

In this case, Plaintiff is unable to produce any evidence to support a finding that RARE engaged in intentional conduct so severe as to amount to criminality. Following extensive written discovery (including interrogatories and document requests), as well as nine (9) depositions, Plaintiff has not discovered sufficient facts to support an award of punitive damages, even if she were to prevail on one of her substantive claims. Plaintiff's alleged harassment is nothing more than the result of difficult interactions with her coworkers that were unrelated in

any way to her membership in a protected class, let alone intentional discrimination on the part of RARE due to her membership in such a protected class. Accordingly, Plaintiff's demand for punitive damages in this case should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant RARE Hospitality, Inc.'s Motion for Summary Judgment should be granted.

RARE HOSPITALITY, INC.

By its Attorneys,

/s/ Stephen J. MacGillivray
/s/ Sheryl Hanley
/s/ Raymond M. Ripple

Stephen J. MacGillivray (#5416)
Sheryl D. Hanley (#5439)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)
smacgillivray@eapdlaw.com
shanley@eapdlaw.com
rripple@eapdlaw.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that this document has been filed electronically on this 30th day of October, 2006 and is available for viewing and downloading to the ECF registered counsel of record:

Catherine Sammartino, Esq.
Marta E. Garrett, Esq.
Andrew Berg, Esq.
Sammartino & Berg LLP
128 Dorrance Street, Suite 400
Providence, RI 02903
cas@sbllp.net

/s/ Raymond M. Ripple
Raymond M. Ripple