UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA ELLIOT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-479-ML |
| | ) | |
| RARE HOSPITALITY, INC. d/b/a THE CAPITAL GRILLE | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT RARE HOSPITALITY, INC.'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule Cv 56, Defendant RARE Hospitality, Inc. ("RARE") submits this Statement of Undisputed Facts in support of its Motion for Summary Judgment with respect to the claims asserted in Plaintiff Linda Elliot's ("Plaintiff") Complaint. With respect to those allegations of Plaintiff stated herein, RARE concedes the truth of these allegations for purposes of the Motion for Summary Judgment, but does not waive the right to contest those allegations on the merits.

**Undisputed Facts**

**A. Plaintiff's Job Position.**

1. The Capital Grille is a four-star steakhouse restaurant with a location in Providence, Rhode Island. (Deposition Transcript of Linda Elliot ("Elliot Tr.") 142: 20 – 21) (Copies of cited pages of Plaintiff's Deposition Transcript are attached hereto as Exhibit A.)

2. Plaintiff was employed as a server at The Capital Grille's Providence, Rhode Island location for approximately twelve (12) years, from November 1991 until her termination on September 26, 2002. (Plaintiff's Complaint ("Compl.") ¶ 10.)

3. As a server, Plaintiff's job duties included waiting on tables. (Elliot Tr. 43: 2-5.) Approximately one year after beginning her employment at The Capital Grille, Plaintiff was given the position of "head server." (Elliot Tr. at 43: 10 – 12.)

4. As head server, Plaintiff handled additional job responsibilities, which included the handling of money for the cash-out of other servers, training new servers, and assisting management with the closing of business at the end of an shift. (Elliot Tr. 44: 18 – 20.) On account of her position as head server, Plaintiff was familiar with management's responsibilities and policies. (Elliot Tr. at 45: 18 - 20.)

5. Plaintiff was not the only head server at The Capital Grille. While there was only one head server per shift, several servers at The Capital Grille had the head server title. (Elliot Tr. at 46: 15 – 17; 47: 2 – 4.)

6. During the relevant time period, head servers did not receive additional compensation from The Capital Grille that was higher than the wages of other servers. However, head servers had access to additional and more favorable seating areas within the restaurant, which provided the possibility of receiving tip income that was higher that other servers. (Elliot Tr. at 56: 15 – 23.)

## B. RARE's Team Member Handbook and Harassment Policies.

7. Plaintiff received a copy of RARE' s Team Member Handbook. (Elliot Tr. at 50: 18 – 51: 1.)

8. RARE's Team Member Handbook, which is provided to all employees, contains a sexual harassment policy statement stating that

> [s]exual harassment . . . will not be tolerated at RARE HOSPITALITY, INC. This includes harassment by supervisors, team members, vendors, and Guests. Any team member who engages in any action or conduct constituting harassment will be subject to appropriate disciplinary action, up to an including termination.

(Elliot Tr. at 52: 17 – 24; Elliot Tr. at Exh. B at 22 – 23 (copies of cited pages of Exh. B to the Elliot Tr. are attached hereto as Exhibit B).)

9. The sexual harassment policy further provides the following information regarding the reporting of claims of harassment:

> All complaints of harassment should be reported to one of your managers, your Regional Manager, or Nancy Winship in Human Resources (800-434-MAIL.) **The important thing is that you talk to someone who can help,** since we cannot protect you from such behavior if we are unaware that it is occurring. Every complaint will be investigated and appropriate action taken in accordance with this policy.

(Elliot Tr. at Exh. B at 22 – 23.)

10. The Team Member Handbook also specified numerous examples of reasons for which immediate termination would be appropriate, without resorting to lesser forms of warnings or reprimands. (Id.) Among the reasons, RARE specifies that the following conduct is grounds for immediate termination:

> 26. Disorderly conduct; engaging in horseplay; fighting or provoking a fight, *or use of physical force against a team member* or Guest except in self-defense; acts of violence towards a team member or Guest using obscene, profane or abusive language; causing a disturbance; engaging in lewd, obscene or otherwise inappropriate or disorderly conduct.

(Id. at 26.)

11. Plaintiff admits that it was The Capital Grille's policy that employees who engaged in the use of physical force in the workplace would be subject to immediate termination. (Elliot Tr. at 93: 8 – 11.)

**Plaintiff's Employment at RARE and Her Allegations of Harassment.**

12. Plaintiff was one of the top servers at The Capital Grille in terms of sales, and received several awards for service and her sales ability. (Elliot Tr. at 49: 6 – 17.)

13. During Plaintiff's first ten (10) years of employment – or from 1991 until 2001, she enjoyed working at The Capital Grille and did so in a "harassment-free environment." (Elliot Tr. at 65: 22 – 25.)

14. Plaintiff enjoyed a good relationship with her managers, and believed they were accessible for all employees. (Elliot Tr. at 49: 18 – 24.)

15. Beginning in November 2001, Plaintiff alleges that she encountered harassment from several other servers that "wanted [her] fired." (Elliot Tr. at 141: 15 – 19.)

16. On November 7, 2001, Plaintiff alleges that she was preparing salads for dinner guests when she was asked to assist a food runner with the delivery of several meals. (Elliot Tr. at 84: 11 – 16) When she returned to her salads, they were no longer where she had left them. Plaintiff alleges that another server informed her that Regina Curran, a fellow server, had taken her salads. (Id. at 84: 16 – 17.) Plaintiff then returned to make additional salads and opened the refrigerator to obtain more salad. (Id. at 84: 20 – 24.) Plaintiff alleges that Regina Curran then reached into the same refrigerator to obtain additional salad, when a plastic bag of salad fell and hit Plaintiff in the face. (Id. at 85: 3 – 10.) According to Plaintiff, the incident went no further. (Id. at 85: 10 – 13.) Regina Curran, however, alleged in a complaint reported to management that Plaintiff had pushed her during the incident. (Elliot Tr. at 88: 15 – 24.)

17. On November 8, 2001, the day following the incident with Regina Curran, Plaintiff was reprimanded by Brian Foye, The Capital Grille's Regional Director of Operations, for pushing Regina Curran. (Elliot Tr. at 90: 9 – 91: 13.)

18. Mr. Foye directed the Plaintiff to sign a document entitled "Written Warning and Last Chance Agreement." The warning stated that

> [t]he investigation found that you used poor judgment and acted inappropriately in dealing with another staff member. It is imperative that you use better judgment in your

> actions in the future. The RARE handbook specifically states on page 27, paragraph 26 ***"use of physical force against a team member or guest except in self defense; acts of violence towards a team member or a guest; causing a disturbance; engaging in inappropriate or disorderly conduct."***
>
> We conclude that your actions warrant termination of employment, however, due to certain mitigating circumstances, including your acknowledgement you understand the seriousness of your misconduct, we are willing to provide you with one last chance to adhere to policies and procedures. Any future infractions o company policy will result in immediate termination.

(Elliot Tr. at Exh. G (attached hereto as Exhibit C).)

19. Plaintiff signed the Last Chance Agreement "under duress," and alleges that Regina Curran lied regarding the pushing allegations in order to have her fired. (Elliot Tr. at 93: 2 – 7.)

20. Plaintiff later wrote a memorandum to Brian Foye expressing her concern that Regina Curran had lied regarding the pushing allegations. (Elliot Tr. at 135: 23 – 136: 4.)

21. Plaintiff alleges that she overheard Mr. McDonald and Mr. Moren claiming that they would "get her." (Plaintiff's Responses to First Set of Interrogatories ("Plaintiff's Responses") at 8) (a copy of the relevant pages of Plaintiff's Responses are attached hereto as Exhibit D.)

22. Plaintiff alleges that she heard Mr. Moren refer to her as "the evil one" (Plaintiff's Responses at 8), "sexless" (Elliot Tr. at 125: 21 – 126: 8), and on three to five occasions as "queen." (Elliot Tr. at 125: 10 – 20.)

23. Plaintiff's car was "keyed" in the restaurant parking lot, but admitted that it did not occur on account of her age. (Elliot Tr. at 198: 12 – 13.)

24. Plaintiff alleges that Mr. McDonald and Mr. Moren would make statements to her such as "Don't touch me," "Don't push me," or "You've been warned." (Plaintiff's Responses at 8.)

25. That on several occasions her guests' checks were deleted from the restaurant computer system, causing delays in serving her guests. (Id. at 7 – 8.) Plaintiff is unaware, however, the name(s) of the individual(s) that deleted the information. (Elliot Tr. at 150:2 – 5.)

26. Stephen Lydon testified that confusion regarding guest checks is not unheard of in a busy restaurant environment. (Deposition Transcript of Stephen Lydon ("Lydon Tr.") at 31: 3 – 8.) (A copy of cited pages of the Lydon Tr. are attached hereto as Exhibit E.)

27. That during her last year of employment, Mr. Moren would "often" call her "bitch" on a "nightly basis" during their interactions while working the same shift. (Elliot Tr. at 120: 16 – 17.)

28. That Mr. McDonald, Mr. Moren, and other servers would not assist other servers, or otherwise act as "team players." (Elliot Tr. at 69: 12 – 15.) Plaintiff, however, "could not remember the names" of those who had refused to help her. (Id. at 72: 8 – 10.)

29. On May 23, 2002, Plaintiff alleges that she observed Mr. McDonald pour milk into a refrigerator that she had recently cleaned. (Plaintiff's Responses at 8.)

30. When she reported this issue to the manager on duty at the time, Stephen Lydon, Mr. Lydon indicated that he would report the incident to Kenneth Osgood, the Managing Partner of The Capital Grille. (Id.)

31. On May 24, 2002, Plaintiff met with Mr. Osgood to discuss her recent complaint regarding Tom McDonald. During that meeting, Mr. Osgood informs Plaintiff that there had been several recent complaints about her by Mr. McDonald regarding her inappropriate use of physical force in the workplace. (Elliot Tr. at 83: 5 – 84: 7; Deposition Transcript of Kenneth Osgood ("Osgood Tr.") at 39:19 – 40:8 (a copy of cited pages of the Osgood Tr. are attached hereto as Exhibit F).)

32. Indeed, on May 23, 2002, Mr. McDonald had filed an employee grievance form regarding Plaintiff's recent use of physical force. (RARE's Responses to Plaintiff's First Set of Interrogatories at 8.) (A copy of cited pages is attached hereto as Exhibit G). On account of Plaintiff's conduct, Mr. Osgood informed Plaintiff that she was no longer to serve in the capacity as head server. (Elliot Tr. at 83: 10 – 24.)

33. Plaintiff's demotion from the position of "head server" only lasted for a period of two-weeks when she was reinstated as head server. (Elliot Tr. at 101: 10 – 15.)

34. Following her demotion from head server, Plaintiff claims that Mr. Moren and Mr. McDonald increased their discussions regarding pushing and shoving – "I became more aware of them constantly around me saying pushing and shoving, don't push me, don't shove me." (Elliot Tr. at 112: 18 – 24.)

35. Plaintiff testified that it was her belief that Ms. Curran, Mr. McDonald, and Mr. Moren were "out to get [her] fired."

> A. Chris [(another server at the restaurant)] was well aware that Tom McDonald and also Rob Moren and Regina [Curran], who was a friend of the male servers, he had heard these three servers say that they were – that they were out to get me, and by that I meant that they were out to get me fired through their little – it was their group that would constantly say that I was pushing and shoving people, which was totally false.

(Elliot Tr. at 108: 10 – 18.)

36. Plaintiff testified that she is not clear whether other servers heard Mr. Moren, Ms. Curran, and Mr. McDonald discussing pushing and shoving. (Id. at 111: 18 – 20.)

37. Plaintiff testified at her deposition that she believed a female server, Regina Curran, was harassing her as well. Plaintiff testified that Ms. Curran, Mr. Moren, and Mr. McDonald wanted her fired because they wanted her position. (Id. at 219:19 – 220: 13.)

38. Prior to her demotion from head server, Plaintiff's relationship with Mr. Moren was "absolutely" professional. (Id. at 127: 2 – 5.)

39. On September 21, 2002, Plaintiff had an altercation with Mr. Moren at the service bar of the restaurant. As reported to management, Mr. Moren alleged that Plaintiff shoved him in an effort to obtain room at the service bar and referred to him as a "queer." Plaintiff denies that she shoved him at the service bar and alleges that Mr. Moren responded "lick my d---." (Plaintiff's Responses at 9 – 10.)

40. Mr. Moren complained to the manager on duty, Stephen Lydon, regarding the altercation. (Deposition Transcript of Robert Moren ("Moren Tr.") at 64: 15 – 65: 7) (A copy of cited pages of the Moren Tr. are attached hereto as Exhibit H.)

41. On September 26, 2002, Mr. Osgood terminated Plaintiff for her conflict with Mr. Moren, and her violation of the Last Chance Agreement. (Lydon Tr. at 52: 16 – 17; 53: 9 – 20.)

42. Upon leaving Mr. Osgood's office following her termination, Plaintiff slammed the office door into one of the servers upon her exiting the building. (Id. at 55: 2 – 56: 12.)

43. Plaintiff claims that when she would discuss employment issues with her managers Ken Osgood or Steve Lydon they made comments along the lines of "why don't you just retire?" (Elliot Tr. at 173: 16 – 174: 3.) Plaintiff could only recall Mr. Lydon making this comment on two occasions. (Elliot Tr. at 176: 12 – 15.) Moreover, Plaintiff could only recall such a discussion with Mr. Osgood occurring on one occasion during her final year of employment, and "possibly" on one other occasion. (Elliot Tr. at 176: 24 – 177: 4.)

44. Approximately three (3) months following her termination, Plaintiff alleges that she received a "hate letter" in the mail. (Elliot Tr. at 222: 12 – 15.)

45. The un-signed letter contained the following references: "monkey-woman"; "ugly"; and "hag". The letter also stated "fired at 60! Ha-Ha", even though Plaintiff was not sixty (60) at the time of her termination. (Compl. ¶ 22.)

46. Plaintiff attributes the creation of this letter to her former co-worker, Mr. Moren. (Compl. ¶ 23.)

47. The Capital Grille did not reinstate Plaintiff's employment, despite Plaintiff's request for reinstatement. (Elliot Tr. at 215: 3 – 18.)

48. On July 16, 2003, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Rhode Island Commission for Human Rights (the "Commission"), which checked "Sex" and "Retaliation" as the bases for her claim of discrimination. (Charge of Discrimination, attached hereto as Exhibit I.)

49. When describing the particulars of her claim for discrimination, Plaintiff alleged that "[d]uring approximately the final year of my employment at [The] Capital Grille, I was subjected to sexist, derogatory comments from male co-workers. In addition, the same male co-workers engaged in acts of harassment, including but not limited to making false accusations of misconduct against me, and interfering with my serving of customers." (Id.)

50. Plaintiff further alleges in her Charge of Discrimination that her complaints to management resulted in her "demotion from head server, and subsequently, my termination." (Id.)

51. Plaintiff claims that she was terminated because she made complaints to management about other servers, and because other servers made false complaints about her. (Elliot Tr. at 218: 4 – 8.)

52. Plaintiff never filed a complaint regarding the alleged harassment with RARE's human resources department in Atlanta, Georgia. (Elliot Tr. at 133: 21 – 134:8.) Plaintiff also never took advantage of the company's 1-800 Number, or "Hot-Line", provided in the Team Member Handbook in order to report any alleged harassment. (Id.)

53. Ronald Corbett, a server at The Capital Grille, testified that Plaintiff was aggressive. (Deposition Transcript of Ronald Corbett ("Corbett Tr.") at 14: 23 – 15: 12.) (A copy of cited pages of the Corbett Tr. are attached hereto as Exhibit J). Mr. Corbett further testified that on one occasion he heard Plaintiff refer to a hostess as a "dirty Jew." (Id. at 17: 6 – 16.)

54. Plaintiff testified that she enjoyed working at The Capital Grille, with the exception of the harassment. (Elliot Tr. at 219: 6 – 18.)

55. Plaintiff sought reinstatement to The Capital Grille following her termination. (Elliot Tr. 213: 9 – 11.)

56. At the time she was terminated, Plaintiff was not informed that she being terminated on account of her age. (Id. at 186: 10 – 11.)

57. RARE terminated the Plaintiff on September 26, 2002, due to her physical altercation with another server on September 21, 2006. The reason provided for the five (5) day delay was that Ken Osgood, the Managing Partner of The Capital Grille, was on vacation and was not back in the restaurant until September 26, 2002. (Lydon Tr. at 46: 22-23.)

RARE HOSPITALITY, INC.

By its Attorneys,

/s/ Stephen J. MacGillivray
/s/ Sheryl D. Hanley
/s/ Raymond M. Ripple

Stephen J. MacGillivray (#5416)
Sheryl Hanley (#5439)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)
smacgillivray@eapdlaw.com
shanley@eapdlaw.com
rripple@eapdlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document has been filed electronically on this 30th day of October, 2006 and is available for viewing and downloading to the ECF registered counsel of record:

Catherine Sammartino, Esq.
Andrew Berg, Esq.
Marta Garrett, Esq.
Sammartino & Berg LLP
128 Dorrance Street, Suite 400
Providence, RI 02903
cas@sbllp.net

/s/ Raymond M. Ripple
Raymond M. Ripple