# EXHIBIT F

Page 1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
PROVIDENCE, SC. SUPERIOR COURT

* * * * * * * * * * * * * * * * *
LINDA ELLIOT *
*
VS. * C.A. NO. 05-049ML
*
RARE HOSPITALITY, INC., d/b/a *
THE CAPITAL GRILLE *
* * * * * * * * * * * * * * * * *

DEPOSITION of KENNETH OSGOOD, taken on behalf of the Plaintiff on Wednesday, October 11, 2006, at the offices of Sammartino & Berg, 128 Dorrance Street, Suite 450, Providence, Rhode Island, commencing at 2:00 P.M. before Rebecca J. Forte, Notary Public.

APPEARANCES

SAMMARTINO & BERG
BY: CATHERINE A. SAMMARTINO, ESQ......FOR THE PLAINTIFF
EDWARDS, ANGELL, PALMER & DODGE
BY: STEPHEN J. MacGILLIVRAY, ESQUIRE..FOR THE DEFENDANT

ALSO PRESENT
Linda Elliot

IRONS & ASSOCIATES
CERTIFIED PROFESSIONAL STENOGRAPHERS
11 South Angell Street #359
Providence, Rhode Island 02906
(401) 861-0909

Page 2

INDEX

WITNESS FOR THE PLAINTIFF PAGE NUMBER
KENNETH OSGOOD
EXAMINATION BY MS. SAMMARTINO........... 3

EXHIBITS
(MARKED PLAINTIFF FOR IDENTIFICATION)

NO. DESCRIPTION PAGE NUMBER
1 Verbal Counseling Verification......33
2 Verbal Counseling Verification......35
3 Memo to Brian Foye dated 11/8/01....48

Page 3

Wednesday, October 11, 2006
(Commencing at 2:00 P.M.)
KENNETH J. OSGOOD
Being duly sworn, deposes and testifies as follows:
EXAMINATION BY MS. SAMMARTINO
Q Okay. Good afternoon, Mr. Osgood. My name is Catherine Sammartino and I represent Linda Elliot in an action currently pending in the United States District Court for the District of Rhode Island. Have you ever had your deposition taken before?
A No, I have not.
Q Okay. I'm going to go over with you some basic rules. I will be posing questions to you. Rebecca here, on your right, is recording everything I say and she will also record everything that you say. You need to respond verbally, rather than by nodding your head or saying uh-hum in order to make sure that she can properly prepare a record of this deposition. You understand that you are under oath?
A I do.
Q Okay. And, if you do not understand any questions that I pose to you, just tell me and I'll rephrase it for you. If you need a break, let me know. We can take a break at any time. Okay?

Page 4

A Okay.
Q All right. What is your current position with The Capital Grille?
A Regional director of operations for the northeast.
Q When you say you're regional director of operations, is that only for Capital Grille restaurant or other types of restaurants as well?
A Just Capital Grille.
Q How many restaurants are there in the northeast?
A There's five restaurants that I oversee, three of which are Capital Grilles, two other are specialty restaurants, one of which is Hemenways, the other one is The Old Grist Mill in Seekonk.
Q So, a total of seven restaurants?
A Five.
Q I'm sorry, three Capital Grille restaurants and then two specialty restaurants?
A Correct.
Q Okay. Do the same policies and procedures apply to all of these restaurants?
A Yes.
MR. MacGILLIVRAY: Objection.
Q When I say policies and procedures, I'm referring to personnel policies and procedures, or are the same

Page 37

was there she would have difficulty in different settings interacting with others in the building, where if she was running behind and needed extra salads and maybe someone else's salad, she would take somebody else's salad because it was up and ready. But, did that just happen to Linda, I can't say it just happened to her, other people would do the same acts, but, pertaining to her, that had been an issue that had been discussed. Obviously, just interaction with other employees throughout the years. She had had trouble with Anthony DiCarlo, Tom McDonald, Tim Corcoran, Regina Curran. There was times where Linda was -- she was extremely focused and she had a job to do, and sometimes if people may be in her way or not as busy as her, there could be space conflicts.
Q And you indicated that this was later on in time. Is it fair to say that you didn't experience those issues in her earlier years as a server?
A Not as often.
Q Why do you think it started to happen later in her career?
A I don't know. I don't know what her situation was, whether there was something going on in her personal

Page 38

life that would distract her. I don't know.
Q Would Linda Elliot come to see you about other servers giving her a hard time, though?
A I don't recall ever having Linda specifically. It was always when an explosion happened and there would be multiple people involved with a certain issue, but I can't recall specifically having a conversation with her regarding somebody else, unless that other individual was involved.
Q When you say when an explosion happens, what do you mean by that?
A When there would be either pushing or shoving between Linda and another person, or there would be verbal conflict.
Q Do you recall Linda Elliot speaking to you about servers using her pass code to access customer orders or checks and switch things around or delete entries?
A I don't recall, but you had brought it up last week. Prior to that, I don't have any recollection to that.
Q You have no independent recollection of Linda having spoken to you about that issue?
A No.

Page 39

Q Do you have any independent recollection about speaking to other managers about that particular issue?
A That is very possible, but I can't recall doing it.
Q Do you recall speaking to Steve Lydon about that particular issue?
A I don't recall, but it, like I said, it is very possible that it could have happened.
Q Do you recall Linda Elliot speaking with you about Rob Moren refusing to move and blocking her way when she was trying to carry dishes or drinks to customers or to the kitchen?
MR. MacGILLIVRAY: Objection.
A Like I said, I can't recall, but I can't specifically state that I heard that, or -- I don't know. I've read so many documents, that there have been a lot of materials that were brought up from the past, but I specifically cannot recall.
Q Do you recall Linda telling you that Mr. McDonald had dumped milk all over the pantry area after she had cleaned it?
A Yes, I actually do recall that.
Q Okay. And -- go ahead.
A I investigated it, nobody had seen anything, or

Page 40

could prove that that, in fact, was McDonald's, or was done.
Q Okay. Did you talk to Mr. McDonald about it?
A I would assume I did.
Q Okay. When you say you investigated it and no one had seen it, you're referring to witnesses other than Ms. Elliot?
A Correct.
Q And what is your practice when it's a he/she said situation, what do you do in those instances?
MR. MacGILLIVRAY: Objection.
Q What I mean by he said/she said situation is, it could be a he/he situation, one server complains about another server and the other server denies that it ever happened, how do you handle that situation?
MR. MacGILLIVRAY: Objection.
A It's kind of like talking about a three-year-old that spilt their milk in the kitchen. Two three-year-olds aren't admitting to who did it. It's one of those things where you probably address it, saying, this incident happened, you know, this is unacceptable, it's not professional, and don't do it.