# Exhibit B

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

* * * * * * * * * * * * * * * * *

LINDA ELLIOT *

*

VS. * C.A. NO. 05-049ML

*

RARE HOSPITALITY, INC., d/b/a *

THE CAPITAL GRILLE *

* * * * * * * * * * * * * * * * *

DEPOSITION of KENNETH OSGOOD, taken on behalf of the Plaintiff on Wednesday, October 11, 2006, at the offices of Sammartino & Berg, 128 Dorrance Street, Suite 450, Providence, Rhode Island, commencing at 2:00 P.M. before Rebecca J. Forte, Notary Public.

COPY

APPEARANCES

SAMMARTINO & BERG

BY: CATHERINE A. SAMMARTINO, ESQ......FOR THE PLAINTIFF

EDWARDS, ANGELL, PALMER & DODGE

BY: STEPHEN J. MacGILLIVRAY, ESQUIRE..FOR THE DEFENDANT

ALSO PRESENT

Linda Elliot

IRONS & ASSOCIATES

CERTIFIED PROFESSIONAL STENOGRAPHERS

11 South Angell Street #359

Providence, Rhode Island 02906

(401) 861-0909

A Okay.
Q All right. What is your current position with The Capital Grille?
A Regional director of operations for the northeast.
Q When you say you're regional director of operations, is that only for Capital Grille restaurant or other types of restaurants as well?
A Just Capital Grille.
Q How many restaurants are there in the northeast?
A There's five restaurants that I oversee, three of which are Capital Grilles, two other are specialty restaurants, one of which is Hemenways, the other one is The Old Grist Mill in Seekonk.
Q So, a total of seven restaurants?
A Five.
Q I'm sorry, three Capital Grille restaurants and then two specialty restaurants?
A Correct.
Q Okay. Do the same policies and procedures apply to all of these restaurants?
A Yes.
MR. MacGILLIVRAY: Objection.
Q When I say policies and procedures, I'm referring to personnel policies and procedures, or are the same

Q Do you have any independent recollection about speaking to other managers about that particular issue?
A That is very possible, but I can't recall doing it.
Q Do you recall speaking to Steve Lydon about that particular issue?
A I don't recall, but it, like I said, it is very possible that it could have happened.
Q Do you recall Linda Elliot speaking with you about Rob Moren refusing to move and blocking her way when she was trying to carry dishes or drinks to customers or to the kitchen?
MR. MacGILLIVRAY: Objection.
A Like I said, I can't recall, but I can't specifically state that I heard that, or -- I don't know. I've read so many documents, that there have been a lot of materials that were brought up from the past, but I specifically cannot recall.
Q Do you recall Linda telling you that Mr. McDonald had dumped milk all over the pantry area after she had cleaned it?
A Yes, I actually do recall that.
Q Okay. And -- go ahead.
A I investigated it, nobody had seen anything, or

could prove that that, in fact, was McDonald's, or was done.

Q Okay. Did you talk to Mr. McDonald about it?

A I would assume I did.

Q Okay. When you say you investigated it and no one had seen it, you're referring to witnesses other than Ms. Elliot?

A Correct.

Q And what is your practice when it's a he/she said situation, what do you do in those instances?

MR. MacGILLIVRAY: Objection.

Q What I mean by he said/she said situation is, it could be a he/he situation, one server complains about another server and the other server denies that it ever happened, how do you handle that situation?

MR. MacGILLIVRAY: Objection.

A It's kind of like talking about a three-year-old that spilt their milk in the kitchen. Two three-year-olds aren't admitting to who did it. It's one of those things where you probably address it, saying, this incident happened, you know, this is unacceptable, it's not professional, and don't do it.