# Exhibit F

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, SC. SUPERIOR COURT

* * * * * * * * * * * * * * * * *

LINDA ELLIOT *

*

VS. * C.A. NO. 05-049ML

*

RARE HOSPITALITY, INC., d/b/a *

THE CAPITAL GRILLE *

* * * * * * * * * * * * * * * * *

DEPOSITION of ROBERT MOREN, taken on behalf of the Plaintiff on Tuesday, October 10, 2006, at the offices of Sammartino & Berg, 128 Dorrance Street, Suite 450, Providence, Rhode Island, commencing at 11:00 A.M. before Rebecca J. Forte, Notary Public.

APPEARANCES

SAMMARTINO & BERG

BY: CATHERINE A. SAMMARTINO, ESQ....FOR THE PLAINTIFF

EDWARDS, ANGELL, PALMER & DODGE

BY: SHERYL HANLEY, ESQUIRE.........FOR THE DEFENDANT

COPY

ALSO PRESENT

Linda Elliot

IRONS & ASSOCIATES

CERTIFIED PROFESSIONAL STENOGRAPHERS

11 South Angell Street #359

Providence, Rhode Island 02906

(401) 861-0909

Q How long have you been there?
A Twenty years.
Q Do you have any children?
A No.
Q Ever been married?
A No.
Q Starting with elementary school, where did you attend elementary school?
A Elementary would be St. Mary's.
Q Is that in Rhode Island?
A Yes.
Q And where in Rhode Island?
A Bristol.
Q Where did you go for your high school education?
A Bristol High School.
Q And when did you graduate?
A Nineteen seventy-seven.
Q And did you attend college?
A Yes.
Q Okay. And where did you go?
A Roger Williams College.
Q What years did you attend Roger Williams?
A Let me think, it was '79 to '81. It's two-and-a-half years.

Q All right. And following your education at Roger Williams College, what was your first job?
A Well, I went to Johnson & Wales College. My first job was working construction for Benevides Construction.
Q How long did you work for that company?
A Maybe a year.
Q What type of work did you do?
A I was assistant to the contractor.
Q Who was that?
A Carl Benevides.
Q Why did you leave that job?
A I went to Johnson & Wales.
Q So, what were the years, or the year that you attended Johnson & Wales?
A That would have been '80 -- '83 -- I'm not sure.
Q So, sometime in the '80's, is that fair to say?
A Yes.
Q And did you obtain a degree at Johnson & Wales?
A No. I only attended one year.
Q What was your field of study during that time?
A Business management.
Q All right. And so before you went to Johnson & Wales, you worked for one year at Benevides

reservation when the owner wasn't there.

Q How frequently was that, that the owner wasn't there?

A Well, wasn't there. He wasn't there during the day, so during the days that I was there, I would be in charge of reservations, so any time that he wasn't there, which, again, he was there most nights.

Q And following your employment at The Old Canteen, I take it you went to The Capital Grille?

A Yes.

Q Can you tell me who interviewed you for that position?

A It was three interviews, it was Jim Lyman, Ken Cusson and Ken Osgood.

Q Is Mr. Lyman still an employee of The Capital Grille?

A Capital Grille, another location, Chicago.

Q How about Mr. Cusson?

A Mr. Cusson is no longer with the company.

Q Do you know when he left?

A He left probably a year after I was there -- maybe not even a year. So, I want to say in between -- it was probably 2000. I started in '99. It might have been the end of '99, but I don't recall.

Q Yes.
A She did.
Q And where did she go?
A She walked down here, and I think she went to the kitchen, and I went straight up to the upper level with my drinks.
Q Could you draw an arrow to where Linda Elliot went and put her initials, LE. And, if could you draw where you went, an arrow and put your initials. Thank you.

MS. SAMMARTINO: I'm going to have this marked as Exhibit 4.

(Whereupon Plaintiff's Exhibit 4 is marked for identification.)

Q Okay. All right. So, you went to see Steve Lydon?
A Uh-hum.
Q And what did you tell him?
A And, again, remember, this is 9:00 o'clock in the middle of a Saturday night.
Q I understand.
A So, I went up, after I served my drinks, I got Steve on the side and I said, "Steve, you need to know that Linda Elliot just pushed me and called me a queer twice." He said, "Oh, my God. Oh, no.

You're kidding." I had said, "Steven, I know it's busy. It's the middle of the night." I said, "That woman's opinion means nothing to me, but you need to know what she said." So, he just said, "Oh, my God," this and that. "Okay, okay." And, again, I don't remember. So, that was it. I just went about my business, worked the rest of the night.

Q Okay. So --

A And, I think he said, I'll have to talk to Ken, or I'll talk to Ken, but I'm not 100 percent sure if he said that.

Q Was Ken Osgood there that night?

A No, Ken Osgood was not.

Q So, what happened after that?

A So, then I worked Sunday, but neither of them was working. The manager on was Ron Mezza, so I didn't mention it to him. I didn't want to get into it again. It was bad enough. I was already upset about the whole incident. And, so, the following, I want to say Monday or Tuesday, Ken Osgood spoke to me and asked me what happened.

Q Does Mr. Osgood typically work on weekend nights?

A Yes. When he was the gentleman, now he's regional, but at the time he was a general manager, he did.

Q And did he ask you at that point to prepare a statement?

A I don't remember if it was that day or maybe the next day when I came in, because I don't -- again, I know when I wrote it up, I think it was on a Wednesday, so the only reason I'm saying I don't think I waited to speak to Ken until the Wednesday was because I must have, I worked Monday and I had worked, maybe I didn't work Tuesday, but I don't remember if the exact -- I want to say, yeah, I think it had to be when I spoke to him the first time that I had to write that up.

Q And --

A I don't know whether he talked to Linda first and then I wrote it up, or. Again, the time, I'm not exactly sure.

Q Well, you saw Mr. Osgood sometime early the following week after the incident occurred --

A Right.

Q -- and you had a meeting with him, was anyone else present at the meeting?

A I don't remember if Steve Lydon was in the room, also. He could have been.

Q And you indicated that Mr. Osgood asked you what

Unit # ______________ Social Security ______________

HOSPITALITY RARE INTERNATIONAL, INC.

**PROGRESSIVE DISCIPLINE** NOTIFICATION SYSTEM FOR EMPLOYEES©

## VERBAL COUNSELING VERIFICATION

Robert Morin [illegible]

Employee Name | Reference to Personnel Rule/Regulation | Date of Incident

SUMMARY [illegible]

Employee (or Witness) Signature/Date 3·10·99 | Supervisor Signature/Date

## WRITTEN WARNING NOTIFICATION

Robert Morin | | 3·28 & 3·29

Employee Name | Reference to Personnel Rule/Regulation | Date of Incident

Robert had a complaint from guests on Sunday 3·28 table 72

SUMMARY They complained it was ther 5th visit & by far the worst service they have ever had. I gave them a 25.00 comp. card) The following Monday for lunch Ken Osgood had a table on 51 comp. they told him they had to be out at a certain time & to [illegible] [illegible] off they said it was the worst servic they ever had

Employee (or Witness) Signature/Date [signature] | Supervisor Signature/Date

## SECOND WRITTEN WARNING

(From ___/___/___ Thru ___/___/___)

Robert Morin | | 4-27-99

Employee Name | Reference to Personnel Rule/Regulation | Date of Incident

SUMMARY Rob was in station seven, one of his guest approached the host stand looking for a manager regarding his service, he stated that he was unable to get another bottle of wine aswell as drinks for his large table, he said that he had not received their apps yet never mind their entrees. Rob clearly has a problem serviced our guest in a high volume type of restaurant. Robert A. Morin

Employee (or Witness) Signature/Date | Supervisor Signature/Date

## EMPLOYEE TERMINATION NOTIFICATION

Employee Name | Reference to Personnel Rule/Regulation | Date of Incident

SUMMARY ____

Employee (or Witness) Signature/Date | Supervisor Signature/Date

RA000049

OFFICE COPY

6-17-2004

Last chance agreement for Rob Moren concerning staff.

This is to confirm that any abusive contact or interaction with other staff or team members will constitute grounds for termination.

I have read and understand I will abide by this agreement.

Rob R. Moren