UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA ELLIOT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-479-ML |
| | ) | |
| RARE HOSPITALITY, INC. d/b/a THE CAPITAL GRILLE | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT RARE HOSPITALITY INTERNATIONAL, INC.'S**
**PRETRIAL MEMORANDUM**

Pursuant to this Court's Pretrial Order, as amended, Defendant RARE Hospitality International, Inc. ("RARE") hereby submits the following pretrial memorandum.

## I. Statement of Matters to be Proven in Defense

This case concerns the termination of employment of Plaintiff Linda Elliot ("Plaintiff") from The Capital Grille restaurant in Providence, Rhode Island. The Capital Grille is owned by RARE.

On September 28, 2002, Plaintiff was terminated from The Capital Grille for her repeated violations of the RARE Team Member Handbook by engaging in pushing and shoving of other servers. Plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights, and later the instant action, alleging that she was subjected to a hostile work environment while an employee. Plaintiff further alleges that her termination was in retaliation for her complaints to RARE management regarding mistreatment by her coworkers. RARE will demonstrate in the defense of this action that Plaintiff was not subjected to a hostile work environment in violation of Rhode Island's Fair Employment Practices Act, R.I. Gen. Laws § 28-

5-1 or the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1. Moreover, RARE will further demonstrate in the defense of this action that the Plaintiff was terminated for a legitimate, non-discriminatory reason.

**A. Background.**

**1. Plaintiff's Job Position.**

The Capital Grille is a four-star steakhouse restaurant located in downtown Providence. Plaintiff was employed at The Capital Grille from November 1991 to September 26, 2002 as a server. Plaintiff's job duties included primarily waiting on customers' tables. Approximately one year after beginning her employment at The Capital Grille, Plaintiff was given the position of "head server." There were several head servers at The Capital Grille with only one serving on any given shift. As head server, Plaintiff had additional job responsibilities including handling money for the cash-out of other servers, training new servers, and assisting management with the closing of business at the end of a shift. On account of her positions as server and head server, Plaintiff was familiar with management's responsibilities and policies. Head servers did not receive additional salary, but had access to additional and more favorable seating areas, which provided the possibility of receiving additional tip income.

**2. RARE's Team Member Handbook and Harassment Policies.**

Plaintiff was provided RARE's Team Member Handbook, which is provided to all employees and contains a sexual harassment policy stating that

> [s]exual harassment . . . will not be tolerated at RARE HOSPITALITY, INC. This includes harassment by supervisors, team members, vendors, and Guests. Any team member who engages in any action or conduct constituting harassment will be subject to appropriate disciplinary action, up to an including termination.

The sexual harassment policy further provides the following regarding the reporting of claims of harassment:

> All complaints of harassment should be reported to one of your managers, your Regional Manager, or Nancy Winship in Human Resources (800-434-MAIL.) **The important thing is that you talk to someone who can help**, since we cannot protect you from such behavior if we are unaware that it is occurring. Every complaint will be investigated and appropriate action taken in accordance with this policy.

The Team Member Handbook also specifies numerous examples of reasons for which immediate termination is appropriate, without resorting to lesser forms of warnings or reprimands. Among the reasons, RARE specifies that the following conduct is grounds for immediate termination:

> 26. Disorderly conduct; engaging in horseplay; fighting or provoking a fight, *or use of physical force against a team member* or Guest except in self-defense; acts of violence towards a team member or Guest using obscene, profane or abusive language; causing a disturbance; engaging in lewd, obscene or otherwise inappropriate or disorderly conduct.

Plaintiff admitted at her deposition that it was The Capital Grille's policy that employees who engaged in the use of physical force in the workplace would be subject to immediate termination.

### 3. Plaintiff's Employment at RARE and Her Allegations of Harassment.

Plaintiff was highly motivated and one the best employees by many objective factors: she showed up to work on time, never called in sick, won awards for her service and sales numbers, and served as a "manage-assist" on several occasions. By her own admission, during her employment, Plaintiff enjoyed a positive relationship with her managers and supervisors, admitting in her deposition that management was accessible to all employees.

Despite the Plaintiff's foregoing attributes, RARE's management and employees will testify that Plaintiff was aggressive and engaged in physical contact including unprovoked pushing and shoving. RARE's management and employees will testify that her aggressive behavior increased to unacceptable levels during her final year of employment. RARE's

management will testify that they received several complaints of Plaintiff's aggressive behavior of the course of many months finally culminating in Plaintiff's termination.

On November 7, 2001, Regina Curran, a female server, complained to management that the Plaintiff had pushed her while attempting to obtain salads from a refrigerator. Ms. Curran will testify that the Plaintiff pushed her during this incident, and that the contact was reported to management by way of making a complaint to the manager-on-duty, as well as calling the 800-number provided in the RARE Team Member Handbook.

On November 8, 2001, the day following the incident with Regina Curran, Plaintiff was reprimanded by Brian Foye, The Capital Grille's Regional Director of Operations, for pushing Regina Curran. As part of the reprimand, Mr. Foye directed the Plaintiff to sign a document entitled "Written Warning and Last Chance Agreement." The warning stated that

> [t]he investigation found that you used poor judgment and acted inappropriately in dealing with another staff member. It is imperative that you use better judgment in your actions in the future. The RARE handbook specifically states on page 27, paragraph 26 ***"use of physical force against a team member or guest except in self defense; acts of violence towards a team member or a guest; causing a disturbance; engaging in inappropriate or disorderly conduct."***
>
> We conclude that your actions warrant termination of employment, however, due to certain mitigating circumstances, including your acknowledgement you understand the seriousness of your misconduct, we are willing to provide you with one last chance to adhere to policies and procedures. Any future infractions of company policy will result in immediate termination.

(Plaintiff's Last Chance Agreement.) (emphasis in original.)

On May 24, 2002, Plaintiff met with Mr. Osgood. During that meeting, Mr. Osgood informed Plaintiff that there had been several recent complaints about her by Tom McDonald, a co-worker, regarding her inappropriate use of physical force in the workplace. Indeed, on May 23, 2002, Mr. McDonald had filed an employee grievance form regarding Plaintiff's recent use of physical force. On account of Plaintiff's conduct, Mr. Osgood informed Plaintiff that she was

no longer to serve in the capacity of head server. This "demotion" only last for a period of two (2) weeks.

On September 21, 2002, Plaintiff had an altercation with Robert Moren, a fellow server, at the service bar of the restaurant. As reported to management, Mr. Moren alleged that Plaintiff shoved him in an effort to obtain room at the service bar and referred to him as a "queer." On September 26, 2002, Mr. Osgood terminated Plaintiff for her conflict with Mr. Moren, and her violation of the Last Chance Agreement.

## II. Statement of Supporting Law

Following the decision on RARE's Motion for Summary Judgment, Plaintiff's Complaint contains the following claims, as well as a demand for punitive damages:

### A. Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 (Gender-Based Hostile Work Environment Claim)

In order to prevail on her hostile work environment claim, Plaintiff must prove the following: (1) the employee is a member of a protected class; (2) the employee was subjected to unwanted harassment; (3) that the harassment was based upon her gender; (4) that the harassment was sufficiently severe and pervasive so as to alter the conditions of her employment and create an abusive environment; (5) that the harassment was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it do be so; and (6) that some basis for employer liability has been established. DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 23 (R.I. 2005) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).)[1]

[1] Because FEPA is the Rhode Island state analog to Title VII, Rhode Island courts consistently follow federal court decisions interpreting Title VII when analyzing FEPA claims. See Dollar Tree, 875 A.2d at 21 (holding that the Rhode Island Supreme Court "will remain faithful to federal precedents interpreting federal anti-discrimination statutes, such as Title VII"); Newport Shipyard, Inc. v. Rhode Island Comm'n for Human Rights, 484 A.2d 893, 898 (R.I. 1984) (same).

The incidents of harassment relied on by Plaintiff to prove her claim must be based on her gender, and not as a result of gender-neutral workplace harassment. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex." Oncale v. Sundowner Offshore Servcs., Inc., 523 U.S. 75, 80 (1998) (emphasis added.) See Bartlett v. Am. Power Conversion Corp., C.A. No. 05-084-ML, 2006 WL 2709494, at *6 (D.R.I. Sept. 20, 2006) (holding that "fatal flaw" to plaintiff's hostile work environment claim was "some evidence that she was harassed *because of* her gender."). Anti-discrimination laws were intended to protect employees from discrimination based on their membership in a protected class, not based on their existence as a person or their mere status as an employee. See Bartlett, 2006 WL 2709494, at *6.

Moreover, Plaintiff must be able to demonstrate that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment or to create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)). To assess whether alleged harassment reaches this level of severity, courts will "examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Id. (citing O'Rourke, 235 F.3d at 729.) See also Harris, 510 U.S. at 21.

Title VII is neither a civility code nor a general anti-harassment code. Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 44 n.5 (1st Cir. 2003) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). The First Circuit has noted, "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick

skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard cold world." Suarez v. Pueblo Int'l Inc., 229 F.3d 49, 54 (1st Cir. 2000). Offensive utterances and offhand comments do not amount to discriminatory changes in the terms and conditions of employment. Russell v. Enter. Rent-a-Car Co. of R.I., 160 F. Supp. 2d 239, 261 (D.R.I. 2001); Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.").

In order to establish employer liability for the conduct of Plaintiff's coworkers, the Plaintiff must demonstrate that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." Crowley v. L.L. Bean Co., Inc., 303 F.3d 387, 400 (1st Cir. 2003). With regard to employer liability for the conduct of supervisors, RARE may be subject to vicarious liability for it, subject to the Faragher/Ellerth defense. Under the Faragher/Ellerth defense, the employer must show that it "exercised reasonable care to prevent and correct promptly" the harassment, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998), and that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

**B. Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 (Retaliation)**

In order to prevail on her retaliation claim, Plaintiff must prove the following: (1) that she engaged in protected conduct; (2) that she experienced an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse employment action.

Once the Plaintiff establishes a *prima facie* case of retaliation, RARE has the burden of coming forward with a "legitimate, nondiscriminatory business reason for the adverse employment action." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (noting that the burden shifting standard applies to retaliation claims). If the employer articulates a non-discriminatory reason for plaintiff's termination, the burden shifts back to the plaintiff to put forth admissible evidence to show pretext. See Augustin v. Yale Club of New York City, C.A. No. 03-1924, 2006 WL 2690289, at *27 (S.D.N.Y. 2006) (describing pretext as "circumstances that would be sufficient for a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination").

"[I]n assessing pretext, a court's 'focus must be on the perception of the decision maker,' that is, whether the employer believed its stated reason to be credible." Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 247 (1st Cir. 2006) (holding that a plaintiff's denial of wrongdoing is not enough to raise an inference of pretext) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)); see Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 46 (1st Cir. 2002) (holding that "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [s]he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive" of discrimination).

**C. Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1**

Plaintiff also has pled a claim for relief under the RICRA. RICRA provides as follows:

> Discrimination prohibited. – (a) All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided is permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to

> like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

R.I. Gen. Laws § 42-112-1(a).

This Court has held repeatedly that a plaintiff's inability to prevail on a FEPA or Title VII claim will doom a companion RICRA claim. See, e.g., Kriegel v. State of Rhode Island Dept. of Corr., 266 F. Supp. 2d 288, 301 n.14 (D.R.I. 2003) (holding that plaintiff's inability to establish hostile work environment claim under FEPA means that his RICRA claim for hostile work environment also fails); Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 573 (D.R.I. 1996) (holding that if Plaintiff succeeds in proving FEPA allegations, she will also succeed on her RICRA claim).

### D. Demand for Punitive Damages

Plaintiff chose to pursue her harassment claims under Rhode Island law, as opposed to Title VII, and therefore her claims are governed by the punitive damages standard under Rhode Island law. Under Rhode Island law, a plaintiff is entitled to punitive damages only when she produces "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished." Palmisano v. Toth, 624 A.2d 314, 318 (R.I. 1993). In Palmisano, the Rhode Island Supreme Court emphasized that the standard for imposing punitive damages "is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." Id. (citing Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir. 1992)). Whether a party seeking punitive damages "has met the high standard imposed on such an award," and whether there are adequate facts to support such an award, is a question of law for the court. Id.; see Pharmacy Servcs., Inc. v. Swarovski North Am. Ltd., C.A. No. 04-072-T, 2006 WL 753055, at *6 (D.R.I. Mar. 21,

2006) (holding at the summary judgment stage that plaintiff "failed to present any evidence that would support [] a finding [of punitive damages]").

**III. List of Defendant's Exhibits and List of Witnesses**

RARE has separately filed a List of Exhibits and List of Witnesses with the Court, and served copies of the same upon opposing counsel.

**IV. Proposed Jury Instructions**

RARE has submitted its Proposed Jury Instructions via the Electronic Case Filing System contemporaneously with this Memorandum.

**V. Probable Length of Trial**

RARE submits that the probable length of trial will be four (4) days, which includes both the Plaintiff's presentation of evidence and RARE's presentation of evidence in defense of Plaintiff's case.

**VI. Pretrial Legal Issues**

RARE anticipate the following pretrial legal issues:

(1) The admissibility of the alleged "Hate Card" received by the Plaintiff on or about December 27, 2002 – approximately three (3) months following her termination from The Capital Grille;

(2) Bifurcation of the liability and damages phases of the trial; and,

(3) Statute of limitation issues.

In addition to the foregoing, RARE anticipates the need to file several motions in *limine*, the topics of which are uncertain as of the date of this filing given RARE's need to review the witness and exhibit lists set forth in Plaintiff's Pretrial Memorandum.

RARE HOSPITALITY
INTERNATIONAL, INC.

By its Attorneys,

/s/ Stephen J. MacGillivray
/s/ Sheryl D. Hanley
/s/ Raymond M. Ripple
Stephen J. MacGillivray (#5416)
Sheryl D. Hanley (#5439)
Raymond M. Ripple (#6489)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)
smacgillivray@eapdlaw.com
shanley@eapdlaw.com
rripple@eapdlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document has been filed electronically on this 2nd day of February, 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Catherine Sammartino, Esq.
Marta E. Garrett, Esq.
Andrew Berg, Esq.
Sammartino & Berg LLP
128 Dorrance Street, Suite 400
Providence, RI 02903
cas@sbllp.net

/s/ Raymond M. Ripple
Raymond M. Ripple